Matter of Jeffrey VV. v Angela VV. (2019 NY Slip Op 07655)





Matter of Jeffrey VV. v Angela VV.


2019 NY Slip Op 07655


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

526819

[*1]In the Matter of Jeffrey VV., Appellant,
v
Angela VV., Respondent. (And Five Other Related Proceedings.)

Calendar Date: September 5, 2019

Before: Garry, P.J., Lynch, Mulvey and Devine, JJ.


Michelle I. Rosien, Philmont, for appellant.
Larisa Obolensky, Delhi, for respondent.
Christopher Hammond, Cooperstown, attorney for the child.



Garry, P.J.
Appeals from three orders of the Family Court of Chenango County (Revoir Jr., J.), entered May 3, 2018, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2005). Pursuant to a March 2015 order, the mother was granted sole legal and physical custody of the child and the father received supervised visitation. In February 2016, the father filed a petition to modify the prior order by removing the supervision requirement and increasing his parenting time, together with a violation petition alleging that the mother had failed to facilitate his visitation and the child's counseling. In March 2016, the father filed another violation petition alleging that the mother had failed to facilitate his visitation on certain additional dates.
Following court appearances, Family Court dismissed the February 2016 modification and violation petitions without prejudice. As to the March 2016 violation petition, the court issued a separate order finding that the mother had willfully violated the March 2015 order and establishing a schedule for the father's supervised visits. The court declined to impose a sanction for the violation. The father appealed from the dismissal of the February 2016 petitions, and this Court reversed and remitted the matter to Family Court for a hearing on those petitions.
Upon remittal, Family Court restored the two petitions to the court calendar. On the date of the fact-finding hearing, the father filed two new violation petitions and a family offense petition. Family Court dismissed these at the outset of the hearing, finding that the violation petitions were duplicative of the 2016 violation petitions and that the conduct alleged in the family offense petition did not constitute a family offense. After conducting fact-finding and Lincoln hearings, Family Court dismissed the three 2016 petitions. The father appeals.[FN1]
Turning first to the February 2016 modification petition, the father bore the threshold burden to show a change in circumstances after the entry of the March 2015 order that warranted an inquiry into the child's best interests (see Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1556-1557 [2019]; Matter of Perry v Leblanc, 158 AD3d 1025, 1026 [2018]; Matter of Kuklish v Delanoy, 155 AD3d 1376, 1377 [2017]). The March 2015 order required the father and the child to continue mental health counseling until successfully discharged. The order further provided that the father's supervised visitation was to be facilitated by communication between his mental health provider and the child's mental health provider, and directed the mother and the father to make reasonable efforts to facilitate this contact. The father alleged in the modification petition that the child was not receiving counseling, the father was not receiving supervised visits, the persons selected as supervisors for the father's visitation were not always available, no communication between the father's counselor and the child's counselor had occurred and the mother had made no efforts to facilitate this communication or the father's increased contact with the child.
The father and the therapist who was treating the child were the only witnesses at the hearing. The therapist testified that the child had been in therapy throughout the relevant time period and had made significant gains in maturity, anger management, social skills and other areas. The therapist stated that, after the child had been in therapy for some time, the therapist had recommended a reduction in the frequency of the child's appointments and had seen the child only when needed and for monitoring purposes every few months. He stated that he had recommended this reduced schedule because of the child's progress, that the mother did not request it, and that the therapist was not aware that the mother had caused any lapse in the child's treatment. The therapist testified that difficulties in arranging a meeting with the father's mental health provider as required by the March 2015 order had been caused by communication problems between the providers and were not the fault of the mother, who had done everything necessary to permit the contact. Finally, the therapist testified that the child had repeatedly voiced opposition to visits with the father, that the conditions that had initially made supervised visitation advisable had not changed and that, in his opinion, supervision was still necessary.
The father then testified that he had mistakenly believed that the March 2015 order required the child to undergo counseling with the father's mental health provider as well as with the child's therapist, but that he now understood that the order did not impose such a requirement. He stated that he did not know whether the child's therapist was treating the child and that he "assumed" that such treatment had been occurring. He further testified that he did not believe that the mother was at fault for the counselors' difficulties in communicating with one another. He stated that he had been receiving weekly two-hour supervised visits with the child, that he scheduled these visits through the supervisors rather than through the mother, that the supervisors were not always available, that he missed visits at these times, and that the primary reason that makeup visits had not always occurred was because the supervisors were not available.
At the close of the hearing, Family Court took judicial notice of its prior orders and of a 2012 custody evaluation and a March 2015 order by a psychologist who had evaluated the child, the father and the mother pursuant to a court order and had recommended an expanded relationship with the father, including brief periods of unsupervised visitation. Based upon these documents and the hearing testimony, the court found that matters had remained "basically stagnant" since the entry of the March 2015 order, that there had been minimal progress in the relationship between the father and the child, and that the father had not met his burden to establish a change in circumstances. Accordingly, the court did not proceed to an analysis of the child's best interests. The record provides a sound and substantial basis for this determination and, thus, for the dismissal of the February 2016 modification petition (see Matter of Heasley v Morse, 144 AD3d 1405, 1406-1407 [2016]; Matter of Gilbert v Gilbert, 128 AD3d 1286, 1287 [2015]; Matter of De Cicco v De Cicco, 29 AD3d 1095, 1096 [2006]).
As for the February 2016 violation petition, the hearing record demonstrates that "there was a lawful court order in effect with a clear and unequivocal mandate, [and] that the [mother] had actual knowledge of the conditions of that order" (Matter of Prefario v Gladhill, 140 AD3d 1235, 1236 [2016]; see Matter of James XX. v Tracey YY., 146 AD3d 1036, 1037 [2017]). However, the father acknowledged that the mother was not at fault for the miscommunication between the mental health providers or the unavailability of supervisors and that his belief that she was not facilitating the child's therapy arose from a misunderstanding, and he did not demonstrate any other failures to comply with the March 2015 order. Thus, he did not meet his burden to establish the third prong of the test by showing "that the [mother's] actions or failure to act defeated, impaired, impeded or prejudiced a right of the [father]" (Matter of Constantine v Hopkins, 101 AD3d 1190, 1191 [2012] [internal quotation marks and citation omitted]; accord Matter of Prefario v Gladhill, 140 AD3d at 1236; Matter of James XX. v Tracey YY., 146 AD3d at 1037). Family Court did not err in dismissing the February 2016 violation petition.
The March 2016 violation petition was decided by an October 2016 order of disposition that determined that the mother had willfully violated the March 2015 order. That order was appealable as of right (see Family Ct Act § 1112 [a]), but no such appeal was taken. The inclusion of the March 2016 petition in the proceedings following this Court's remittal of the two petitions before us on the father's prior appeal was clearly inadvertent; we note that neither of the parties was represented during those proceedings by the same counsel who had represented them in the prior appeal. Thus, as the mother concedes, the dismissal of the March 2016 petition must be reversed (see generally Family Ct Act § 1113; Matter of Freihofer v Freihofer, 104 AD2d 92, 94 [1984]).
The father next contends that Family Court erred in dismissing the two violation petitions that he filed in May 2018, just before the fact-finding hearing, because they contained new allegations that were not included in the February 2016 petitions. However, upon dismissing the May 2018 petitions, the court stated that it would nevertheless permit the parties to offer evidence on the new allegations, which essentially reiterated the same violations set forth in the February 2016 petitions — that is, the mother's alleged failures to engage the child in counseling and provide the father with visitation — and enumerated new instances upon which these violations had allegedly occurred. The father expressly agreed to this procedure and was, in fact, permitted to offer evidence about his allegations regarding events after the February 2016 petitions were filed. Thus, his current claims are unpreserved (see CPLR 4017, 5501 [a] [3]).
Finally, we find no merit in the father's claim that he did not receive the effective assistance of counsel. "To successfully maintain an ineffective assistance of counsel claim, a party must demonstrate that he or she was deprived of meaningful representation as a result of his or her lawyer's deficiencies" (Matter of Audreanna VV. v Nancy WW. , 158 AD3d 1007, 1010 [2018] [internal quotation marks and citations omitted]; see Matter of Brent O. v Lisa P., 161 AD3d 1242, 1246 [2018]). "[A]s it is not the role of this Court to second-guess counsel's trial strategy or tactics, a party seeking to prevail on an ineffective assistance of counsel claim must do something more than engage in hindsight speculation as to the viability of counsel's strategy" (Matter of Bennett v Abbey, 141 AD3d 882, 883 [2016] [internal quotation marks, brackets and citations omitted]). The father's counsel may well have had strategic reasons for failing to subpoena the father's mental health provider to testify at trial, to pursue a lengthy redirect examination after the father's cross-examination, or to question the father about his interactions with the child, as counsel could reasonably have concluded that such tactics would not have yielded information supporting the father's claims. The father's claim that his counsel did not meet with him was belied by the record, as counsel stated that he, the father and the father's previous counsel conducted a lengthy meeting before the fact-finding hearing. The factual allegations of the 2016 modification proceeding — specifically, the mother's alleged noncompliance, the unavailability of supervisors and the lack of communication between the mental health providers — were extensively discussed throughout the father's testimony, even if the modification petition was not specifically mentioned by counsel. The father's counsel conducted lengthy cross- and re-cross-examinations of the child's therapist, questioned the father in detail and made several objections during the hearing. Upon review, we find that he provided the father with meaningful representation (see Matter of Chasity CC. v Frederick DD., 165 AD3d 1412, 1417 [2018]; Matter of Bennett v Abbey, 141 AD3d at 884-885; Matter of Robinson v Bick, 123 AD3d 1242, 1242-1243 [2014]).
Lynch, Mulvey and Devine, JJ., concur.
ORDERED that the order entered May 3, 2018 dismissing the modification petition and the violation petition filed on February 23, 2016 and the violation petition filed on March 21, 2016 is modified, on the law, without costs, by reversing so much thereof as dismissed the violation petition filed on March 21, 2016, and, as so modified, affirmed.
ORDERED that the orders entered May 3, 2018 dismissing the two violation petitions and the family offense petition filed on May 1, 2018 are affirmed, without costs.



Footnotes

Footnote 1: We deem any issues pertaining to the dismissal of the family offense petition to be abandoned, as the father's brief raises no arguments related thereto (see Matter of Eck v Eck, 57 AD3d 1243, 1244 n [2008]).